August 26, 2016

Michael S. Barth
PO Box 832
Far Hills, NJ 07931
(917) 628-6145

The Honorable Lois H. Goodman
United States Magistrate Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

R E C E I V E D

AUG 2 9 2016

Re: ISBR v. Bernards et al, No 3:16-CV-01369 (MAS) (LHG)

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Dear Judge Goodwin:

I received a copy of the Court's Docket 60 that Orders Mediation in this matter. (Copies omitted.) Docket 60 references Plaintiffs letter filed as Docket 59 that sought this Honorable Court to reopen Discovery. From a review of Document 59 at Pacer.Gov, it is hard to imagine what plaintiffs were thinking when they decided to include their self published graphic material; other than to put members of the public in risk of physical harm. Plaintiffs attempt to link the material to those individuals who attended the planning board meetings below is frivolous at best. Plaintiffs continued attempt to abuse the legal process supports this Court reconsider the previous motion to intervene to dismiss plaintiffs RLUIPA claims for lack of standing. (Dismissed without prejudice.) Alternatively, the court having unquestioned power, if not a duty, should *sua sponte* direct dismissal of the action on its own motion. (Citation omitted.) Alternatively, please certify for appeal to the United States Court of Appeals for the Third Circuit the question whether plaintiffs have standing under RLUIPA; considering the United States Supreme Court decision in Spokeo v. Robins, 578 U.S. ___ (Decided May 16, 2016).

Plaintiffs' convoluted letter makes it impossible to identify any relevancy of the content included in Document 59. Plaintiffs attempt to seemingly top "George Carlin's Seven Filthy Words" is not appropriate and is misguided. *Referencing* FCC v. Pacifica Foundation, 438 US 726 (1978). Plaintiffs self publish material that by their own religious standards is blasphemy, pornographic, and or profanity. (Reference omitted.) Publication of some information in plaintiffs' letter could result in a death sentence and execution in plaintiff Chaudry's country of origin. *See example* Victor v. Holder, 616 F.3d 705 (CA7 2009). (It is not clear from the record whether plaintiff Chaudry is a US Citizen as he did testify below that some of his beliefs were inconsistent with the US Constitution.) Assuredly plaintiffs are aware that articles initiated in the U.S. have comments posted that originate from other countries, if not other contingents. Plaintiffs are irresponsible and hard pressed to suggest such material originate from those who opposed plaintiffs' land use application. Plaintiffs may recall they actually complained in their view that those opposed to their planning board application did everything they could to avoid the mention of religion. (Reference omitted.) For plaintiffs to even suggest these images are in anyway related to those who opposed plaintiffs' land use application is beyond the pale of

1

common sense and makes one wonder if they are abusing the court process to radicalize their own followers. Without any evidence, plaintiffs' letter should be deemed inflammatory and details stricken from the record as lacking a foundation and irrelevant. Dismissing plaintiffs' RLUIPA claims is prudent considering the inappropriate details contained in Document 59.

Plaintiffs' "media war" argument is hypocritical, distorted and deceptive, considering their initial New York Times article was published the same day they filed a complaint. (*Compare* date of NP 1-3 with Docket 1.) Moreover Chaudry's "dream" to build a mosque is incorrectly reported as even his counsel admitted he purchased 124 Church Street as a cultural center but when the concept plan was denied he tried to convert it to a mosque application. Some articles correctly state the rendering shows it wasn't even designed to look like a mosque. One commenter posted it resembled a house built for Nantucket. (References omitted.) Presumably if Chaudry's "dream" was to establish a mosque and not a community center he would have graduated from a seminary. Instead he testified he was not an Imam, not qualified as an expert and leads a cultural center. It is logical to conclude plaintiffs wanted a biased one-sided media blitz for personal gains; as no one would otherwise expect this Honorable Court to be influenced by such. Based on the distorted content of plaintiffs' press releases, they obviously lack a common sense understanding of the word inflammatory and truthfulness. Applying plaintiffs' own standard, their press releases support dismissing their RLUIPA claims.

It is ironic that plaintiffs attempt to defend the Department of Justice (DOJ) in their letter when the DOJ themselves vetted a possible conflict. It is not clear from plaintiffs' letter whether this Court instructed the parties to avoid all media contact for both the Civil and the DOJ matters. Where reported it appears properly questioned whether there is a conflict of interest between the DOJ lead investigator and Plaintiff Chaudry. (NP 4-7.) Otherwise the public was unaware of the DOJ internal vetting. (NP 8-11.) This appears particularly relevant as the DOJ and the lead investigator both recognized the same concern as Bernards; the lead investigator brought up the conflict of interest. The DOJ Handbook and American Bar Association rules seem to clearly warn of such appearances. (Reference omitted.)   While the DOJ may "self-police" themselves under the U.S. Federal Conflict of Interest Statute and other Rules; it is reasonable for others to conclude there is a conflict. For Example, an application of the Conflict of Interest statute warns Government Employee against using their Official Government title on a non-profit board letterhead. *Participation in Professional Organizations: Ethics for Federal Employees,* Richard M. Thomas, Associate General Counsel, U.S. Office of Government Ethics (Date unknown). Compare Drew University Non-profit Advisory Board documentation that lists Attorney Caroline Sadlowski in this matter with her official title with the United States Government. (NP 12-13)  If not an actual conflict, it appears a letterhead and non-profit board web page are sufficiently equal in terms and in conflict with the guidance to avoid using one's Government title; thereby at least suggesting an appearance of a conflict of interest, if not an actual.

Whether there is a conflict of interest is relevant considering Bernards has indicated they have already turned over hundreds of thousands of documents to the DOJ. If a conflict of interest, then the production of those documents is an "end-around" the existing stay of discovery that only prolongs this matter. This is particularly concerning as the DOJ RLUIPA investigation

2

appears moot if the private RLUIPA claims are dismissed. Plaintiffs themselves link the instant litigation to the DOJ investigation. Not that silence is always an admission, but the DOJ did not dispute the basis in my decline to speak with them. That basis was the RLUIPA complaint filed with the DOJ is moot if the RLUIPA claims in the instant litigation are dismissed. (DOJ initiated email and email response omitted.) Presumably the DOJ complaint has some "monetary value" to the plaintiffs themselves if it is to be dropped as part of a settlement negotiation. If the RLUIPA claims are dismissed for lack of statutory standing, it appears a lower monetary value would attach to the instant claims that would then greatly facilitate settlement discussions and thus dispose future consideration of this case for the public.

Also relevant from the New York Times is the admission by the DOJ that it is attempting to make America more "Muslim hospitable". (NP 14-15.) A DOJ initiative to make America more hospitable for Islam than other religions, if not a conflict of interest, it is a patent First Amendment Establishment Clause violation. Such an Establishment Clause violation makes it more difficult for the plaintiff and defendant to settle the instant litigation; then unnecessarily drags the public along for many more months than necessary. This seems inconsistent to the efficiency mandate of the judicial system when the RLUIPA claims should be dismissed.

Dismissing the RLUIPA claims is also relevant since based on documents posted on the Bernards website, the ISBR has asked Bernards for a copy of "every document" the township has on file with certain of its residences. The request also lists a bizarre number of other inquiries. (NP16 - NP19.) It is too obvious that many people were not previously familiar with some of the names and terms plaintiffs mention until plaintiff raised. This requires those to have to look up the terms and individuals after they were mentioned by plaintiff to understand for example, who is as plaintiffs mention and what does Pamela Geller have to do with this litigation? [Document Request No. 12]. If as ISBR thinks Pamela Geller is relevant to this suit, and she reports that a Saudi Government official pledged $32B to promote Islam in America; other than fact that such a pledge should be a violation of the First Amendment Establishment Clause, what relevancy is it to Plaintiffs argument? (NP 20.) As to the Saudi Government Pledge that apparently are available to those as plaintiff: Presumably the United States Constitution was written to avoid the Government of England establishing a Church in America, then presumably the Constitution was written to avoid the Government of England from establishing a Mosque in America, then presumably the Constitution was written to avoid the Government of Saudi Arabia from establishing Mosques in America. Such an Establishment Clause violation where Foreign Government grants translate into excessive legal fees in matters such as those already noted in the instant litigation make such matters near impossible to settle. This then translates into the continued intrusion by plaintiffs like ISBR into constitutionally protected rights of private citizens as here that should be prohibited through the motion to dismiss.

Applied personally, Plaintiffs demand of Bernards for "every document concerning..." makes it difficult to settle a separate matter where the Township filed suit against me. *Referencing* Bernards v. Barth, (Somerset County) *on appeal de novo* Barth v. Bernards, Tax Court of New Jersey Docket No. 368-2016. Whatever documents Bernards seeks in that settlement presumably will be turned over to ISBR. It seems evident plaintiffs here seek copies of any

3

photos of the inside of one homes that a tax assessor may take, perhaps whether someone has a Holy Book on their coffee table as even the DOJ wanted to interview people in their homes; or following ISBR's distorted logic, other health and safety issues such as copies of those who have a firearms permit presumably now necessary for many to defend against those plaintiffs seek to radicalize with their self published offensive photos. (This is in addition to where reported: plaintiff's supporters cornering individuals in the Post Office; their supporters tearing up people's lawn signs in front of them; their supporters banging on doors of homeowners asking them to explain why they have a lawn sign, etc.) Accordingly, plaintiffs RLUIPA claims should be dismissed to resolve and to show that plaintiffs are not entitled to documents sought in their inquiry that was determined under other case law as offensive to the United States Constitution. (Citations omitted.)

(Presumably the suit by Bernards noted above is *prima facie* evidence individuals like me have no influence on the decision in denying the plaintiff's application before the planning board.)

While Spokeo originated over the Fair Credit Reporting Act, there the Supreme Court reinforced the mandatory requirement that a District Court ensure a plaintiff has standing to move a case forward. Applying the Spokeo principles here, plaintiffs lack standing to proceed under RLUIPA. While plaintiff may feel they were "injured", those injuries are self inflicted. They purchased property without a sufficient legally cognizable interest in a sewer easement across someone else's property necessary for the application. Spokeo shows such self inflicted wounds are not the type Congress intended to elevate to bring before a court under a statute such as RLUIPA. Spokeo even went further than the Ann Arbor case cited in the initial motion to intervene to dismiss plaintiffs RLUIPA claim in that without a legally cognizable interest, the Supreme Court rules that a plaintiff lacks both statutory and Article III standing. The Third Circuit recently applied Spokeo in Re: Nickelodeon Consumer Privacy Litigation (2016 WL 3513782, Decided June 27, 2016. There the Third Circuit reaffirmed the Supreme Court requirement to ensure the purported injury was the type Congress intended to elevate within a statute.

Here plaintiffs and their counsel admitted below they didn't know what their interest was in the sewer easement necessary to complete the project and they haven't perfected that interest. The burden of proof was on plaintiffs and they admitted they didn't know what their interest is to satisfy that burden of a legally cognizable interest. While it may seem like a "minor defect" in a "chain-of-title", Spokeo (and Ann Arbor) made it clear that a party such as plaintiffs do not have standing and do not proceed based on conjecture. During the planning board proceedings, Counsel for the Planning Board asked the Town Engineer whether they made a mistake during the "completeness review" because plaintiffs lacked this legally cognizable interest. (Reference omitted.) They opined the MLUL (Municipal Land Use Legislation) did not allow them to "undue" the completeness review. However the burden was always on plaintiffs, and they failed. While the MLUL may need to be legislatively amended, that does not give plaintiffs greater property rights that they didn't have before the planning board meetings that they now seek to claim because they realize they will never be able to complete their plans based on their failed property research. The US Supreme Court has made that clear that although plaintiffs may have been able to abuse the planning board process for 4 years that should have

4

been dismissed on "day 1", plaintiffs should not be permitted to abuse the federal district court process when the RLUIPA claims can be dismissed. (Reference omitted.)

The public non-parties subpoenaed in this matter obviously do not have to come to the defense of the Bernards Planning Board. However, to the extent plaintiffs' frivolous suit seeks to now drag the public through an extended period and make additional ludicrous accusations that do not comport with the health and safety of the community; it appears imperative to dismiss plaintiffs RLUIPA claims. Likewise whether Bernards may or may not have felt the need to defend itself in the press against the false and malicious claims brought by plaintiffs in the press against Bernards and the non-parties; and while the DOJ inquiry seemingly is not before this court, clearly defendants "Joint Insurance Fund" (JIF) is not defending the interests of the non-parties that are subject to the continued attempted unconstitutional intrusion of plaintiffs. The JIF's interests may even be contrary to both the Township and the non-parties interests. However there does not appear to be much case law on the subject. *See example* Shapiro v. Middlesex County Mun. Joint Ins. Fund, 307 N.J. Super (NJAD 1998) referencing N.J.S.A. 40A:10-36. (JIF explicitly not an insurer under New Jersey law.)

The role of the JIF in Municipal related litigation appears complex from the Tax Court litigation noted above filed by Bernards Township against myself, that supports why non-parties must be allowed to intervene in the instant litigation to ensure their constitutional rights are protected. While the attorney-client relationship can be complicated at times, it only seems more complicated when in cases like here; the JIF appears to be the client of counsel and a form of a defendant and perhaps it is not really the township. For example, in that tax court case, the attorney for the JIF was basically allowed to completely walk away from the litigation without filing the proper paperwork for withdrawal and substitution. In the JIF mind apparently it was "because they said so" (even though the Tax Court should have demanded they appear and not entertain exparte communication with attorney then not counsel of record). (NP 21-24.) Here there is no way the public non-parties constitutional rights are adequately protected by prolonged litigation, even perhaps for a matter as simple as defendants amending an answer and rightfully so denying plaintiffs standing under RLUIPA.

For the reasons stated, plaintiffs continued requests to reopen discovery related to the public non-parties should be permanently denied through the court reconsidering dismissing plaintiffs' RLUIPA for a lack of standing and based on plaintiffs self publication of material that is contrary to the public safety. Alternatively, please certify the question for appeal to the Third Circuit Court of Appeals whether plaintiff has standing under RLUIPA.

Respectfully submitted,

Michael S. Barth

C:     Adeel A. Mangi, Esq., Counsel for Plaintiffs
       Howard Mankoff, Esq., Counsel for Defendants

N.Y. / Region

**Muslims Sue Over Denial of Bid to Build Mosque in New Jersey Suburb**

About New York

By JIM DWYER MARCH 10, 2016

Photo [Deleted]

Mohammad Ali Chaudry, president of the Islamic Society of Basking Ridge, in midafternoon prayer on Thursday. The group wants to build a mosque. Credit Dave Sanders for The New York Times

*EMPHASIS ADDED*

In a prosperous New Jersey suburb about an hour west of Manhattan, a retired AT&T executive decided with some friends to open a mosque in the town where he has lived for nearly 40 years, been on the board of education, led a task force to create the town's community center and even served as mayor.

About 65 people attended the congregation's Friday prayer services, which were held in rented halls or sometimes in parks.

On the surface, the process seemed straightforward: In November 2011, the group, the Islamic Society of Basking Ridge, led by the former mayor, Mohammad Ali Chaudry, bought a four-acre plot in an area of Basking Ridge where zoning permitted houses of worship. The group's architects and engineers argued that the plan complied by a wide margin with every conceivable building requirement.

To avoid the kind of vitriolic dispute that erupted in a nearby town when a different group tried to build a mosque, the society said, it tried to minimize features that might be seen as ostentatious. The mosque would not have a dome, and its minarets would be styled like chimneys of nearby homes, at heights lower than the steeples of the churches in town. In all, the building would be 4,252 square feet. Within it would be a prayer hall of about 1,600 square feet with room for 150 people.

After presenting the plan to the board in early 2012, Mr. Chaudry, who has a Ph.D. in economics from Tufts University, predicted that the mosque would be built within the year.

What followed were 39 public hearings, and nearly four years of demands by town officials and planning board members for one change after another. Each solution proposed or agreed to by the Islamic Society led to objections on other grounds. Often, members of the public raised issues — some saying that a bucolic area was not the right setting for a mosque, or that it might interfere with a volunteer fire department station across the road.

A leading opponent of the mosque project, who has said that Islamic Shariah law is "one of the greatest threats to American values and liberties," led a relentless campaign of challenges to virtually every aspect of the project.



**Document: Complaint in Basking Ridge Mosque Case**

1

NP1

The application to build the mosque was finally denied in December by the planning board of Bernards Township, which includes Basking Ridge. The site remains as it was when the Islamic Society bought it in 2011.

In a lawsuit filed on Thursday in federal court, the society accused the planning board of breaking a law unanimously passed by Congress in 2000 protecting houses of worship from being unduly burdened by land use regulations. In a 111-page complaint, the Islamic Society said the decision also violated the rights of its members to freely practice their religion and to enjoy equal protection of the law.

"What should have been a simple board approval for a permitted use devolved into a Kafkaesque process," said the suit, filed on behalf of the society by Adeel A. Mangi of the Manhattan law firm Patterson Belknap Webb & Tyler. "These proceedings took place against a backdrop of ugly spectacle."

Lori Caratzola, a resident of Basking Ridge who opposed the mosque, attended virtually all the hearings and regularly put questions to the technical witnesses, said that the board had made a sound decision, strictly on land use grounds. Although she is not named as a defendant in the suit, her affiliations with anti-Islamic groups and websites are cited. "I stand by that," Ms. Caratzola said when asked about her support for the American Public Policy Alliance, which maintains that American legal institutions are under threat from Islamic codes.

Those views were irrelevant, she maintained, to the board's decision.

"Let's say someone or people did have feelings about Islam — the fact that every single terrorist attack in the last 20 years was committed by Muslims — they never spoke about that during the planning board meetings," Ms. Caratzola said. (Her count of terrorist attacks excludes mass shootings in the United States, most of which have been carried out by people not associated with Islam.)

Criticism of the mosque proposal on land use grounds, she said, should not limit what she and other members of the public express elsewhere.

"Are we not allowed to voice concerns about a religion, or is it not O.K. just about Islam?" Ms. Caratzola asked.

Photo



A rendering of the Islamic Society of Basking Ridge's proposed mosque, presented to the local planning board in 2012. Credit

NP2

The decisive moment in the planning board's work came early on, when it turned down the proposal for a 50-car parking lot, although the board's own planner, as well as the township's, appeared to have initially accepted it. The township's formula for church parking, one spot for every three people, "is not applicable to mosques, or for that matter, to 'houses of worship,'" the board's lawyer and planner wrote in a January 2013 memo. "By its express terms, this standard only applies to 'churches,' 'auditoriums' and 'theaters.'"

After nearly a year of haggling, a group opposed to the mosque, the Bernards Township Citizens for Responsible Development, presented an engineer who said a 107-car parking lot was needed. Almost immediately, the board adopted that standard.

Doubling the size of the parking lot led to a host of other micro-concerns, like the possibility that a neighbor 200 yards away would see headlights through a canopy of trees; the adequacy of the drainage; whether a fence would aesthetically please; and where children would be dropped off for Sunday school.

The planning board rejected the application for the mosque in December.

During the process, one blogger opposed to the mosque explained that the strategy was to wear out the mosque proponents.

"Our goal is to force the township planning board to put a stay on the decision, order new studies, and drag the issue into neverland," the blogger wrote, under the name weiminlu99.

At Ms. Caratzola's urging, the township also doubled to six acres the land required for houses of worship, drastically increasing their costs.

The Islamic Society's complaint opens with a statement by President Dwight D. Eisenhower in June 1957, when he spoke at the inauguration of a mosque in Washington.

"And I should like to assure you, my Islamic friends, that under the American Constitution, under American tradition, and in American hearts, this center, this place of worship, is just as welcome as could be a similar edifice of any other religion," said President Eisenhower, who served as the supreme commander of American forces in Europe during World War II. "Indeed, America would fight with her whole strength for your right to have here your own church and worship according to your conscience."

**Correction: March 10, 2016**
An earlier version of this article misstated the name of the group opposed to the building of the mosque. It is the Bernards Township Citizens for Responsible Development, not the Brooks Township Committee for Responsible Development.

Email: dwyer@nytimes.com
Twitter: @jimdwyernyt

A version of this article appears in print on March 11, 2016, on page A22 of the New York edition with the headline: Muslims' Effort to Build a Suburban Mosque, Foiled at Every Turn. Order Reprints| Today's Paper|Subscribe

http://www.nytimes.com/2016/03/11/nyregion/muslims-sue-over-denial-of-bid-to-build-mosque-in-new-jersey-suburb.html?_r=0

NP3

**NJ town rocked by charges of bigotry after rejection of mosque**



By Perry Chiaramonte

Published August 08, 2016
FoxNews.com

Focus on mosques in America intensified

A New Jersey suburb known for its tree-lined streets and stately, multimillion-dollar homes has been transformed into a battleground over both a proposed mosque and the free speech rights of residents who oppose the project.

Bernards, a township of about 27,000 an hour west of New York City, has been cleaved by controversy since 2011, when its Planning Board took up a proposal for a 4,250-square-foot mosque in a residential neighborhood known as Liberty Corner. The applicant, Islamic Society of Basking Ridge, is led by a former Bernards mayor and has filed a federal civil rights suit accusing members of the board of religious discrimination in ultimately rejecting the project.

**Related Image (Photos deleted)**

Chaudry, (l.), and Bianchi, (r.), have both served as mayor of Bernards.

Some 33 residents who spoke out against the project at dozens of public meetings have been subpoenaed in an effort by the plaintiffs to prove bigotry drove the decision.

"This is a land use matter. It never was about religion," current Bernards Mayor Carol Bianchi told FoxNews.com. "Anyone who takes the time to review the transcripts or knows our Planning Board members would draw this conclusion quickly."

The Planning Board and many residents say they were concerned about traffic and other zoning issues, but the lawsuit accuses town officials of violating the Religious Land Use and Institutionalized Persons Act (RLUIPA), which gives religious institutions flexibility when it comes to zoning law restrictions on property use. The U.S. Department of Justice is separatley investigating the case.

*N P4*

**Related Image**



Expand / Contract

This artist's rendering of the project was unveiled at a Planning Board hearing in 2012.

The Islamic group has won the support of several civil and religious liberty advocates, including the ACLU, the Becket Fund for Religious Liberty and Muslim Advocates, a San Francisco-based legal and educational advocacy group.

"I came to America almost 50 years ago with a firm belief in the values that America represents, including freedom of religion before the law," Mohammad Ali Chaudry told The Bernardsville News after the Becket Fund filed a brief in support of his group. "The mosque is part of my American Dream."

Lawyers for the Muslim organization want to interview residents who spoke out against the mosque, and to review their email messages, social media posts and any other evidence they say may prove they were motivated by bias.

NP5

The seeds of the controversy were planted in November of 2011, when the ISBR purchased nearly 4 acres in the quiet neighborhood and then applied five months later to build the mosque, complete with a prayer hall and, ultimately, 107 parking spaces. The proposed mosque was denied by the Planning Board last December following numerous public hearings over the course of more than three years.

"What should have been a simple board approval for a permitted use devolved into a Kafkaesque process that spanned an unprecedented four years and included 39 public hearings," reads a section of the complaint. "These proceedings took place against a backdrop of ugly spectacle."

The plaintiffs, who filed suit March 10, allege that the ISBR and its head, Chaudry, a Pakistani-born, longtime local resident who served as mayor of Bernards Township in 2004, faced "intense hostility" from residents who opposed not only the proposed Islamic center, but the religion of Islam. They say their opponents, including Bernards Township Citizens for Responsible Development, recruited "objectors" to attend the public hearings and speak out against the project, with careful instructions to avoid words that might betray their real motivation.

"This community opposition evolved into a well-funded machine that recruited objectors and coached them to channel their opposition through the permissible language of land use: parking, buffer and screening requirements, storm water management, and so on," they say in their civil complaint.

The lawsuit lists examples of anti-Muslim bias, including vandalism of an ISBR mailbox and comments posted on social media. It also accused the citizens' group of holding a meeting where those preparing to speak out were told, "Please remember, do not make any comments on the religion or Islamic mosque itself. If we do so, we will lose the battle."

### Should Muslims be subject to greater scrutiny? | FindTheData.org

Based on those allegations, the ISBR's lawyers subpoenaed the residents as well as eight current and former Planning Board members. One resident who was subpoenaed told FoxNews.com attorneys for ISBR seemed to be seeking evidence of a conspiracy. The resident, who spoke on condition of anonymity, said the meeting was unnerving.

"I spoke out once, at one meeting," the resident said. "I was tangentially involved. I clearly felt like it was a fishing expedition, that they were looking to find anything to support their case.

"For me, this has a chilling effect," the resident added. "It was scary. They came to my home in the middle of the night to serve me the papers. I feel like I will never speak up in a public forum again."

Bianchi blasted the tactics of ISBR and its lawyers from the prominent New York firm Patterson Belknap Webb & Tyler.

"These tactics are un-American and violate First Amendment rights," Bianchi said. "They are an attempt to bully and harass the community and township into settling the matter on plaintiffs' terms without regard to proper land use concerns, especially safety."

Officials for neither ISBR nor its legal team responded to requests for comment. The Department of Justice confirmed it is probing the case separately, but declined to provide details.

Bianchi said she is troubled not only by the investigation, but also by a key federal prosecutor's association with Chaudry. Caroline Sadlowski, chief of the Civil Division in the U.S. Attorney's Office for the District of New Jersey, serves with Chaudry on Drew University's 14-member Center for Religion and Cultural Conflicts.

NP 6

The mayor added that she feels let down by Chaudry's accusations.

"This community elected Mr. Chaudry to the Township Committee after 9/11 and made him the first Pakistani Muslim mayor in the nation," Bianchi said. "I am disappointed that [he] would call this community, which has always embraced him, bigots."

*Perry Chiaramonte is a reporter for FoxNews.com. Follow him on Twitter at @perrych*

http://www.foxnews.com/us/2016/08/08/nj-town-rocked-by-charges-bigotry-after-rejection-mosque.html

NP7

**Bernards Township officials blast mosque suit, federal probe**

By W. JACOB PERRY Staff Writer

- Jul 27, 2016

**BERNARDS TWP.** – After staying largely silent about a civil lawsuit and a related federal probe into allegations that anti-Muslim bias drove the denial of plans to build a mosque in Liberty Corner, township officials have come out swinging.

In an exclusive interview with this newspaper, the officials challenged the legitimacy of the probe, citing a potential conflict of interest involving the lead investigator and a "rush to judgment."

With respect to the civil suit, filed by the Islamic Society of Basking Ridge (ISBR) and ISBR President Ali Chaudry, a former township mayor, they said the ISBR is threatening to hold the township liable for "exorbitant" legal fees and has subpoenaed residents who opposed the mosque as a means to silence them and saddle them with legal costs.

"It is very disappointing to me that the former mayor of this town, who we trusted, is working to use these tactics and instill fear and intimidation in this community to get the results that he wants," said Mayor Carol Bianchi.

Committeeman John Carpenter said Chaudry resorted to a discrimination claim to bypass the land use process after "an inadequate and uncooperative presentation to the Planning Board."

Chaudry "is trying to extract millions of dollars from the people of the town he once led, and it's appalling," Carpenter said.

Bianchi, Carpenter and Township Attorney John Belardo were jointly interviewed at Belardo's law office in Harding Township on Monday, July 18, with Carpenter participating by speakerphone.

An email message from this newspaper seeking a response from the ISBR's legal representative, Patterson, Belknap, Webb & Tyler, LLP, of New York, was not returned. A phone message left for Chaudry was also not returned.

The proposed mosque was denied by the Planning Board on Dec. 8 after 38 hearings spanning more than three years. The ISBR sought to raze a house on 4.3 acres at 124 Church St. and build a 4,250-square-foot mosque for up to 142 worshippers. There were to be 107 parking stalls.

With the site located between two homes, and the mosque to have five daily prayers and a Sunday school, residents voiced concerns about the affect on the neighborhood.

The ISBR and Chaudry challenged the board's denial in a lawsuit filed in federal court on March 10. The suit claimed the denial resulted from anti-Islamic attitudes in the community, and violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) of 2000.

Within a week after the ISBR suit was filed, the U.S. Department of Justice's Civil Rights Division and the U.S. Attorney's Office for the District of New Jersey confirmed that it had launched an investigation into whether the township violated RLUIPA.

The suit has resulted in extensive negative publicity for the township.

### Conflict Of Interest?

In the July 19 interview, township officials said they discovered a potential conflict of interest in the probe. They said Caroline Sadlowski, chief of the Civil Division in the U.S. Attorney's Office for the District of New Jersey, serves with Chaudry on Drew University's 14-member Center for Religion and Cultural Conflicts (CRCC).

*N P8*

"She's the lead investigator" in the probe, said Bianchi. "The lead investigator."

Belardo said township officials were unaware of the link between Sadlowski and Chaudry until it came up in an Internet search. "It was never disclosed to us by the U.S. Attorney's Office."

The township raised the issue with the U.S Attorney's Office and specifically asked whether Sadlowski's service with Chaudry was a conflict of interest, Belardo said.

The response, signed by Michael E. Campion, chief of the Civil Rights Unit and dated July 8, said Sadlowksi has served on Drew's CRCC "for a little over a year in her personal capacity, not her official capacity" and provides no legal representation.

In "an abundance of caution, she raised the question with her supervisors in our office," he added. The supervisors concluded that her membership on the board with Chaudry "does not create a conflict or an appearance of a conflict of interest with regard to this investigation."

Campion wrote that after the question was again raised by the township on June 30, it was brought to officials at the Department of Justice in Washington, D.C., and they, too, found no conflict or appearance of conflict.

Belardo said township officials "have not yet reached that conclusion because we are not in receipt of the facts on their relationship.

"Were there communications between Ms. Sadlowski and Dr. Chaudry during the hearings?" he asked.

He said township officials learned that when attorney Robert Raymar represented the ISBR before the Planning Board, Justice Department officials "were periodically checking in with him" to see how the process was going.

Said Carpenter, "Clearly, the Department of Justice had been watching for a long time."

Belardo noted that the federal probe was launched only three days after the filing of the ISBR suit, which he called "an incredibly short amount of time for an investigation to follow a complaint."

Carpenter agreed. "There seems to be a rush to judgment," he said. "There seems to be a presumption of wrongdoing, and now it's up to the town to prove otherwise."

Belardo contrasted the probe with a four-year-old Justice Department investigation into the denial of a synagogue in Millburn. He said federal investigators have yet to interview any Millburn officials, but have already questioned three officials here with plans to see two more.

Bianchi said the probe has also required the township to turn over 215,000 pages of documents, requiring 350 hours of staff time. "Compliance has been a costly and time-consuming effort."

A phone message left by this newspaper for Sadlowski drew an email response from Matthew Reilly, public affairs officer for the U.S. Attorney's Office, District of New Jersey. He said his office "vetted" Sadlowski's service on Drew's CRCC prior to the probe and found no conflict of interest, "nor any ethical or professional basis to preclude her from working on the matter."

Reilly said that in response to the concerns raised by the township, the matter was further reviewed by officials at the U.S. Department of Justice, "who reached the same conclusion."

### Discrimination Charge

Typically, when a land use application is denied by the local planning or zoning boards, a legal challenge would be filed with the state Superior Court in Somerville, where a judge would review the site plan issues. Township officials were critical of the ISBR for instead suing in federal court and claiming discrimination under RLUIPA.

$\mathcal{N} \, \mathcal{P} 9$

"We feel it was a land use decision and has nothing to do with religion," said Bianchi. "There was no discrimination."

She noted that Chaudry was elected to the Township Committee after the Sept. 11, 2001, terrorist attacks, and the ISBR held services as well as events in town-owned facilities.

"I don't understand how Mr. Chaudry and his attorneys can call this community discriminatory when this community has always embraced Mr. Chaudry and his congregation," Bianchi said.

"It would have been inappropriate and discriminatory," she added, "if the Planning Board had granted preferential treatment because of his status as a former mayor of the town."

Although township zoning deemed houses of worship a permitted use in residential zones at the time the ISBR proposal was filed, Belardo said the board denied the site plan based on inadequate plans for buffering, storm water management, internal traffic circulation and fire safety.

He said the ISBR never provided the board with a compliant plan to recharge water that would be displaced, and that alone was grounds for denial.

"While the ISBR is entitled to a fair hearing, they're not entitled to preference based upon religion," he said.

Bianchi said that had the ISBR filed a land use lawsuit in Superior Court, "the Planning Board would have prevailed."

A key decision in the land use review occurred in 2013 when the board, citing professional planning standards for mosques, increased the required number of parking spaces from about 50 to 107.

Carpenter said at that point, the ISBR switched legal counsel, going to from Vincent Bisogno, who is a land use attorney, to Raymar.

"He's a litigator," he said of Raymar. "So clearly, (Chaudry) decided at some point ... he would turn this into a confrontational endeavor."

In claiming a violation of RLUIPA, the ISBR suit is using "a powerful tool," Carpenter said. In May, the ISBR suit drew legal support from two national advocacy groups representing 34 religious and civil rights organizations, including the American Civil Liberties Union (ACLU).

But Carpenter spoke dismissively of the groups' involvement, saying "they know nothing about the town or the people of the town."

Bianchi said "it appears former Mayor Chaudry and his attorneys are using their contacts within the federal government and civil rights groups ... to pressure the township to settle in this matter without regard to legitimate land use concerns."

Carpenter said that in the meantime, the ISBR is engaging "a team of six to seven Wall Street attorneys who have been working on a case that would make your head spin."

Belardo said the ISBR had five lawyers at a recent case management conference. He said the ISBR made of a point of informing Howard Mankoff, the attorney for the township's insurer, that its legal fees had reached $1.5 million through the end of June and that the total "will go up by hundreds of thousands of dollars each month."

Bianchi said it "appears Mr. Chaudry and his attorneys expect the taxpayers of Bernards Township to pay these exorbitant legal fees" if they win the case.

As for the township's legal fees, Belado said they "don't even remotely" approach those claimed by the plaintiff.

NP10

According to officials, the legal fees to defend against the ISBR suit included $74,000 for Mankoff's firm through July 21, and $22,700 for Belardo's firm through July 22. Mankoff's fees are being paid by the township's insurer, QBE Specialty Insurance of New York.

Another cost borne by the township are legal fees from hiring two lawyers to ensure QBE provides the required liability coverage. They were hired in May for an initial fee not to exceed $17,500, but the committee planned on Tuesday, July 26, to raise that ceiling to $55,000.

The township has agreed to pay an additional fee of up to $20,000 to an audio recording firm to transcribe recordings from the Planning Board hearings on the ISBR proposal. Bianchi said the cost will be covered by QBE.

### Subpoenas Blasted

Township officials were also critical of the ISBR's decision to issue subpoenas seeking the email addresses and social media accounts of dozens of residents who voiced concerns about the proposed mosque at Planning Board hearings.

Several of those residents have criticized the subpoenas, saying their comments were limited to land use issues like traffic and lighting. But the ISBR suit maintains that objectors were "coached" not to raise religious issues.

One resident filed a motion to quash the subpoenas, leading a judge to temporarily suspend compliance.

"Ali has subpoenaed private residents who exercised their right to be heard at a public hearing," said Carpenter. "It's an anti-free speech campaign he's waging that's appalling. They have to hire attorneys to defend their privacy.

"Who's going to come out" and speak at a Planning Board hearing "and risk being subpoenaed by a disgruntled applicant?" he asked. "How is that helping our democracy?"

Bianchi said she was concerned that the subpoenas would have "a chilling effect on the future participation of residents at land use board hearings." She said residents were personally served with papers at home, often with their families present.

http://www.newjerseyhills.com/bernardsville_news/news/bernards-township-officials-blast-mosque-suit-federal-probe/article_418b7d02-35eb-5906-bdd8-4ca5c048fef3.html

NP11

# CRCC Executive Advisory Board

### Betsy Bernard, Chair (photo deleted)

Betsy Bernard is an accomplished CEO and experienced public company Board Director. As president of AT&T, she led more than 50,000 employees in a $27 billion business. For three consecutive years, Bernard was recognized as one of the United States "50 Most Powerful Women in Business" by Fortune Magazine.

Bernard's significant board experience spans over 15 years and includes United Technologies, Principal Financial Group, Serco Group plc, URS, Telular, ZimmerBiomet Holdings (ZBH) and Sito Mobile. Bernard chairs the nominating and governance committee at the Principal Financial Group and is a member of their finance committee. Additionally, she chairs the nominating committee of ZimmerBiomet Holdings (ZBH) and serves on its compensation committee. She also serves as the lead director of SITO Mobile. Bernard serves as a member of advisory boards for GroTech, Innovate Partners and The Silverfern Group.

Bernard received a Doctor of Laws (Honorary) from Pepperdine University, a Masters degree in Management from Stanford University's Sloan Fellows Program, a Masters of Business Administration from Fairleigh Dickinson University, and a Bachelor's degree from St. Lawrence University.

(Other profiles deleted)

### Mohammad Ali Chaudry (photo deleted)

Mohammad Ali Chaudry, Ph. D. Dr. Chaudry grew up in Pakistan, graduated from the London School of Economics with honors in Economics and Econometrics in 1967 and earned a Ph. D. in Economics from Tufts University (1972). He worked at AT&T from 1968 to 1998 in the Strategic Planning and CFO organizations where he had extensive experience in financial management and business case evaluation.

Currently, Dr. Chaudry is a Lecturer at Rutgers University Division of Continuing Studies. As a member of the faculty, he develops and teaches management courses for the Rutgers School of Business Camden in cooperation with Brookdale Community College in Freehold and with Atlantic Cape Community College Mays Landing. He uses a hybrid format (combination of onsite and online delivery), including a Distance Learning link between two campuses for the on-site sessions.

Dr. Chaudry was elected to the Bernards Township Board of Education (1990 to 1995) in Basking Ridge, New Jersey and led a successful effort during 1996-1997 to build the Bernards Township Community Center. He was elected to the Bernards Township Committee with in 2001 and was re-elected to a second three-year term (2005-2007). He served as Deputy Mayor in 2003 and as Mayor of Bernards Township in 2004, becoming the first Pakistani born Mayor in America.

Dr. Chaudry is a member of the Board of Directors of the Somerset Hills YMCA and of the Somerset County Cultural Diversity Coalition. He also served as a member of the Board of Managers for the Family Services of Morris County, New Jersey in 2003-2004. Dr. Chaudry is a co-founder of the Islamic Society of Central Jersey, one of the first major Islamic centers in the state and served as President of the American Islamic Academy in Boonton for ten years.

### Judith E. Campbell (photo deleted)

Judy Campbell is an accomplished business leader who will receive her Doctor of Letters degree in Irish/ Irish American Studies from Drew in May 2016. In the past few years she has become a sought after author and

NP12

lecturer in Irish American history. She retired in June 2007 as senior vice president and chief information officer of New York Life Insurance Company. Directing a staff of over 1,200 technology professionals and managing an annual budget of over $350 million, she was responsible for setting the strategic technology direction of New York Life and was a member of the company's Executive Management Committee. Her previous experience was in retail banking in New York, New Jersey, and Pennsylvania where she managed consumer loan and deposit businesses as well as technology and operations. Campbell has a B.A. degree from Chestnut Hill College, Philadelphia and a M.Litt. degree from Drew University where she is currently a member of the Board of Trustees.

## Caroline Sadlowski

Caroline Sadlowski Caroline Sadlowski is Chief of the Civil Division in the United States Attorney's Office for the District of New Jersey. She supervises twenty-three Assistant U.S. Attorneys who conduct affirmative and defensive civil litigation on behalf of the United States. Caroline joined the office in 2002. She was previously a member of the Appeals Division, where she served as Deputy Chief from 2011-2015. Caroline also helped to start the District's first Federal Reentry Court in 2013 and is currently a liaison to that court. As such, she works to aid people who have recently been released from federal prison to successfully reintegrate into their communities. Prior to joining the U.S. Attorney's office, Caroline clerked for the Honorable Harold Ackerman in the District of New Jersey. She graduated magna cum laude from Harvard College and graduated cum laude from the University of Michigan Law School, where she was the managing editor of the law review. She also holds a Master's Degree in Theological Studies from Harvard Divinity School.

https://www.drew.edu/crcc/about-the-center/crcc-executive-advisory-board

NP13

**Township Saw a Zoning Issue. The Justice Dept. Saw Religious Discrimination.**

By KATIE SHEPHERDAUG. 7, 2016

Photo [Deleted] Haaris Siddiq, 23, center, a Bensalem Masjid congregation member in a Derek Jeter shirt, during prayers at a converted church in Yardley, Pa. Credit Mark Makela for The New York Times

WASHINGTON — For nearly 10 months, a Muslim congregation in the Philadelphia suburb of Bensalem, Pa., pleaded with township officials to allow the construction of a mosque, paying for expensive traffic studies, repeatedly explaining Islamic practices, revising and re-revising design plans, and then receiving the final word: No.

Then last month, the Justice Department stepped in, charging that the Bensalem Township zoning hearing board had violated federal religious land-use laws by denying the congregation's application after it had granted zoning exemptions for other religious construction projects.

"We were just asking for our mosque, and we just wanted to be treated like everyone else," said Imtiaz Chaudhry, a physician and member of the Bensalem Masjid congregation.

As anti-Islamic rhetoric and discrimination surges this presidential election year, the Justice Department is emerging as a bulwark for embattled American Muslims. Vanita Gupta, who heads the department's civil rights division, said terrorism abroad and at home had led to "an uptick in hate-related incidents against the Muslim community," a surge not seen since the aftermath of the Sept. 11, 2001, attacks.

"We have to be really vigilant here at the D.O.J. because we've seen it happen before," she said.

The Justice Department's efforts in a series of cases like the Bensalem suit stand in contrast to the political environment in which the department operates. The Republican presidential nominee, Donald J. Trump, repeatedly denounces "radical Islam," has declared that he would not allow Muslim immigrants into the country and feuded for days with a Muslim family whose son died in combat while serving in the Army.

A Republican candidate challenging House Speaker Paul D. Ryan in a primary in Wisconsin suggested last week that "Muslim-Americans have been fighting on both sides of the war" on terrorism. Shouting matches over Islam are regular features outside Mr. Trump's rallies.

Photo [deleted]
Imtiaz Chaudhry photographed outside a fire station in Bensalem Township, the temporary worship site of his mosque's congregation. Credit Mark Makela for The New York Times

Against that tide, the executive branch has tried to make the country more hospitable to Muslims. The Justice Department has taken up land-use cases like the one in Bensalem, religious discrimination in the workplace and at school, and hate-crime cases, and it has deployed community leaders to educate people on Islam. *EMPHASIS ADDED*

To be sure, the department has pursued religious discrimination cases involving Muslims since the Sept. 11 attacks. But in the past nine months, after terrorist strikes in Nice, France; Paris; San Bernardino, Calif.; Brussels; and Orlando, Fla., the tension has grown, officials say, and the Justice Department's efforts have increased.

Since November, the Justice Department has established the "Combating Religious Discrimination Today" campaign and taken part in a series of anti-discrimination efforts to celebrate religious pluralism. The department successfully litigated hate crime charges against a Florida man who threatened to firebomb two mosques near St. Petersburg, Fla., and against another man who ripped a hijab from a woman's head on a flight over New Mexico. Federal prosecutors have filed friend-of-the-court briefs citing the religious land-use law to encourage courts in Texas and Florida to order prisons to provide halal meals and to accommodate Muslim inmates who grow beards and wear religious caps.

In mid-July, the department published recommendations from a series of discussions on how to better address modern religious discrimination. Participants voiced concerns about anti-Muslim bias in particular, Ms. Gupta said, including parking or zoning citations targeted at specific religious communities.

To the Justice Department, the Bensalem case stood out. In the past, the township's zoning hearing board granted variances to an Indian Orthodox church, two Hindu temples and several faith-based private schools, among other religious institutions.

*NP 19*

However, when the Bensalem Masjid congregation applied for the same type of variance, it did not get one. The congregation's request was officially denied because zoning hearing board members said they thought the mosque should ask for the property to be officially rezoned — a long, difficult process that other religious groups had not been asked to undertake. Along the way, the board members pressed for traffic studies and demanded more parking spots in the congregation's plans. The official complaint against the township charges that such concerns were veiled discrimination.

"They were scrutinized much more rigorously," said Roman Storzer, a lawyer representing the Bensalem Masjid. "Then they were denied, and denied in a way that all other houses of worship had been approved."

Members of the zoning hearing board said they denied the application because the congregation had failed to meet the legal requirements to qualify for zoning relief.

### Race/Related

Sign up here to join a deep and provocative exploration of race with a diverse group of New York Times journalists.

"For us as a board, there are five requirements that the law says that the applicant needs to approve," Albert Champion, a board member, said at the meeting where the application was denied, according to transcripts. "I don't think that they have proven by the law" that they have satisfied the requirements.

Accusations that religious discrimination is being disguised as common regulatory decision making have increased in recent months. Several mosques in Northern Virginia have reported similar denials for plans to build mosques.

At the Justice Department's round-table discussions, Christians, Jews and members of other faiths voiced worries that anti-Muslim discrimination could lead to renewed discrimination against other religions, Ms. Gupta said.

"When there is an attack on one group, they can stand together," Ms. Gupta said. "An attack on one religion is an attack on all of us."

Indeed, the Justice Department investigated religious land-use violations that targeted Christian churches, Jewish synagogues, Buddhist temples, Muslim mosques and Hindu temples since 2010. In 84 percent of the non-Muslim investigations opened by the department, local governments agreed to solutions outside court. But in cases involving a mosque or Islamic school, only 20 percent were resolved without the department filing suit.

The inability to build a house of worship impedes the Bensalem Masjid's ability to freely practice Islam, said Dr. Chaudhry, a member of the congregation. Many congregants pray in a rented fire hall most Fridays, but the building lacks many of the hallmarks of a mosque that make prayer sacred for Muslims. It does not face Mecca. It lacks a dome and a minaret, which hold special religious symbolism, and the worshipers have no easy way to wash their hands, feet and heads before prayer, as called for in the Quran.

"If anyone walks into a church or synagogue or a mosque that is properly constructed, you have a real spiritual experience just being there," said Dr. Chaudhry, who has lived in Bensalem for more than 25 years. "You don't have that same experience just being in a room where things have been moved around so people can just do their prayer."

Dr. Chaudhry said the township's Muslim congregation was standing up for its right to worship.

"Having a mosque there is kind of like Rosa Parks sitting in the front of the bus," he said, "and they want to push us to the back."

### Correction: August 7, 2016
An earlier version of this article incorrectly identified a new Justice Department program on religious pluralism. It is the "Combating Religious Discrimination Today" campaign, not "Know Your Neighbor."

*Find out what you need to know about the 2016 presidential race today, and get politics news updates via Facebook, Twitter and the First Draft newsletter.*

A version of this article appears in print on August 8, 2016, on page A10 of the New York edition with the headline: To Township, It's a Zoning Issue. To Justice Dept., It's Discrimination. Order Reprints| Today's Paper|Subscribe

http://www.nytimes.com/2016/08/08/us/politics/township-saw-a-zoning-issue-the-justice-dept-saw-religious-discrimination.html?_r=0

$\mathcal{N} \mathcal{P} \mathcal{I} \mathcal{J}$

# COURT FILINGS

Case 3:33-av-00001 The Islamic Society of Basking Ridge & M. Ali Chaudry v. Township of Bernards, Bernards Township Planning Board, Bernards Township Committee; and in their Official Capacities Barbara Kleinert, Jeffrey Plaza, Jim Baldassare, Jodi Alper, John Malay, Kathleen Piedici, Leon Harris, Paula Axt, Randy Santoro, Ric Moschello, Scott Ross, Carol Bianchi, Carolyn Gaziano, Thomas S. Russo, Jr., and John Carpenter

---

**6/30/16 - Per Case Management Order, all Discovery is Stayed Pending Further Order of the Court**

| | |
|---|---|
| Complaint | Click Here |
| Answer | Click Here |
| Planning Board Resolution on Motion for Reconsideration | Click Here |

Motions:

| | |
|---|---|
| Motion to Quash Subpoenas – Barth | Click Here |
| Motion to Dismiss Complaint – Barth | Click Here |
| Bernards' Opposition to Motion on Pleadings | Click Here |
| Bernards' Opposition to Plaintiff's Motion to Quash Planning Board Resolution for Reconsideration | Click Here |

| | |
|---|---|
| US Department of Justice, US Attorney District of NJ, Notice of Investigation and Information and Document Request | Click Here |
| Plaintiff's Document Demand | Click Here |

7/14/16

$N P 16$

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE ISLAMIC SOCIETY OF BASKING RIDGE
and MOHAMMAD ALI CHAUDRY,

*Plaintiffs,*

v.

TOWNSHIP OF BERNARDS, BERNARDS
TOWNSHIP PLANNING BOARD, BERNARDS
TOWNSHIP COMMITTEE, BARBARA
KLEINERT, in her official capacity, JEFFREY
PLAZA, in his official capacity, JIM
BALDASSARE, in his official capacity, JODI
ALPER, in her official capacity, JOHN MALAY, in
his official capacity, KATHLEEN "KIPPY"
PIEDICI, in her official capacity, LEON HARRIS,
in his official capacity, PAULA AXT, in her official
capacity, RANDY SANTORO, in his official
capacity, RICH MOSCHELLO, in his official
capacity, SCOTT ROSS, in his official capacity,
CAROL BIANCHI, in her official capacity,
CAROLYN GAZIANO, in her official capacity,
THOMAS S. RUSSO, JR., in his official capacity,
and JOHN CARPENTER, in his official capacity,

*Defendants.*

Case No. 16 Civ. 1369 (MAS)(LHG)

### PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF
### DOCUMENTS AND THINGS TO DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Islamic Society of Basking Ridge ("ISBR") and Mohammad Ali Chaudry (together, "Plaintiffs")

direct the following requests for production of documents and things to Defendants Township of

Bernards, Bernards Township Planning Board, Bernards Township Committee, Barbara Kleinert,

Jeffrey Plaza, Jim Baldassare, Jodi Alper, John Malay, Kathleen "Kippy" Piedici, Leon Harris,

Paula Axt, Randy Santoro, Rich Moschello, Scott Ross, Carol Bianchi, Carolyn Gaziano,

8776092

$\mathcal{NP}17$

Company, the Liberty Corner Fire Company Site Plan Review Committee, Peter Aprahamian, or

anyone else acting or purporting to act on behalf of the Liberty Corner Fire Company.

**DOCUMENT REQUEST NO. 8**

All documents concerning ISBR's January 17, 2012 presentation, discussion,

work session, or meeting with the Board.

**DOCUMENT REQUEST NO. 9**

All communications among Board Members and Committee Members, or

between Board Members or Committee Members and members of the public, concerning ISBR's

January 17, 2012 presentation, discussion, work session, or meeting with the Board.

**DOCUMENT REQUEST NO. 10**

All documents concerning Muslims, Islam, mosques, the Quran (also known as

the "Koran"), Muslim worship or prayer services, wudu, imams, burkas, hijabs, Sharia (also

known as "Shari'ah"), jihad, or anything else associated with or related to Muslims or Islam.

**DOCUMENT REQUEST NO. 11**

~Emph+Isis Added~

All documents concerning animal sacrifices, taqiyya, tawriya, or Pamela Geller.

**DOCUMENT REQUEST NO. 12**

All documents concerning terrorism or terrorist groups, including Al Qaeda (also

known as "Al Qaida"), the Taliban, Boko Haram, Al-Shabaab, Hamas, Hezbollah, and the

Islamic State of Iraq and Syria (also known as "ISIS," "ISIL," or "Daesh").

**DOCUMENT REQUEST NO. 13**

All documents concerning terrorist attacks, including the World Trade Center

attacks on September 11, 2001, the Boston Marathon bombing on April 15, 2013, the Paris

attacks on November 13, 2015, the San Bernardino shootings on December 2, 2015, and the

Brussels attacks on March 22, 2016.

7

**DOCUMENT REQUEST NO. 14**

All documents concerning any memorials within the Township constructed or otherwise created to commemorate the terrorist attacks of September 11, 2001.

**DOCUMENT REQUEST NO. 15**

All documents concerning the Al Falah Center, plans or proposals to build a mosque in Bridgewater Township, or litigation concerning the Al Falah Center.

**DOCUMENT REQUEST NO. 16**

All documents concerning or communications with the Bernards Township Citizens for Responsible Development (also known as the "BTCRD"); its attorneys, including Robert Simon; its trustees, including Virginia Brady, Alice Smyk, Kenneth Bradley, and Vincent Ursino; or anyone else acting or purporting to act on behalf of the BTCRD.

**DOCUMENT REQUEST NO. 17**

All documents concerning or communications with anyone who served as an expert witness for any objector in the ISBR Proceeding, including Peter Steck, Alexander Litwornia, Paul D. Fox, and William Grundmann.

**DOCUMENT REQUEST NO. 18**

All documents concerning the "Preserve Liberty Corner" movement, any object inscribed with or containing the words "Preserve Liberty Corner," or anti-mosque signs, flyers, banners, email messages, or pamphlets, distributed or otherwise existing at any time within the Township.

**DOCUMENT REQUEST NO. 19**

All documents concerning or communications with Lori Caratzola (also known as "Lori Gordon"), Cody Smith, Christopher Quick, Loretta Quick (also known as "Lori Quick"), Joseph Abbate, Michael Barth, or Linda Arnold.

8776092



# Saudi Prince Pledges $32 Billion to Promote Islam/Sharia in America

ByPamela Geller on July 9, 2015
Advancing Islamic Lies Islamic law in America Saudi Arabia
156 Comments

( Details omitted )

NP20

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
RICHARD J. HUGHES JUSTICE COMPLEX
P.O. BOX 006
TRENTON, N.J. 08625-0006

MOTION FILING NOTICE

Date: 06/13/2016

MICHAEL BARTH
P.O. BOX 832
FAR HILLS, NJ 07931

Title:       MICHAEL S. BARTH V. TOWNSHIP OF BERNARDS
Docket No.   AM-000565-15T3
Motion No.   M-007492-15
             MOTION FOR LEAVE TO APPEAL

    The motion papers were filed under the above docket and
motion numbers. If deficiencies are noted below or an answer is
to be submitted, please return a copy of this notice with said
material to the attention of your case manager, .

**THIS NOTICE CONFIRMS THE FILING OF THE ABOVE MOTION.**  PLEASE
NOTE THAT YOUR CERTIFICATION OF SERVICE DID NOT INCLUDE THE
JUDGE WHO MADE THE DECISION THAT IS THE SUBJECT OF YOUR MOTION.
WE HAVE PROVIDED A COURTESY COPY OF YOUR MOTION PAPERS TO THE
TAX COURT, SO NO ACTION IS REQUIRED.

If you have any questions, please contact your case manager,
Nancy Caterina, at 609-633-2256.

                          JOSEPH H. ORLANDO
                          CLERK

cc: MARTIN ALLEN, ESQ.
    BRIAN HAK, ESQ.
    HON. PATRICK DEALMEIDA, J.T.C.

**ALL ANSWERING PAPERS MUST BE FILED NO LATER THAN JUNE 24, 2016.**

MOTION FILING NOTICE

$N \rho 2/$

June 8, 2016

Michael S. Barth
P.O. Box 832
Far Hills, NJ 07931
908-672-9662

New Jersey Appellate Division
P.O. Box 006
Trenton, New Jersey 08625

Re: Barth v. Bernards Township, Tax Court of New Jersey, 000368-2016

Dear Judges of the New Jersey Appellate Division

Please relax any applicable rules of Court and accept this letter memorandum and appendix in support of the undersigned interlocutory appeal of Judge DeAlmeida's "Order on Motion" granting leave for Martin Allen as substituted counsel for Defendant Township of Bernards (A1).

The "Order on Motion" was entered on May 17, 2016 (A1), postmarked on May 19, 2016 (A2), and received by the undersigned from the Court on Saturday May 21, 2017.

Judge DeAlmedia's Order should be revered because Martin Allen who was then not counsel of record before the Tax Court, admitted he never made a proper "motion" for substitution as counsel; but rather it appears Judge DeAlmedia's Order was based on an ex parte conversation with Martin Allen and the Court - during a period when Martin Allen was not counsel of record.

It also appears Martin Allen provided the Tax Court with incorrect information about the "failure to identify any facts" why Martin Allen should not be allowed to substitute for counsel in this matter.

1

$\Lambda \rho 2 2$

While this matter is under settlement discussions, Judge DeAlmeida himself noted on the record that this case involved due process concerns about the Somerset County Tax Board where suit was brought by Bernards for approximately $5,000 in roll-back taxes. Mr. Martin Allen's failure to abide by the rules of Court for Withdrawal and Substitution only exacerbates those due process concerns.

As noted in the Monday May 16, 2016 memo of Barth to the Tax Court, Mr. Allen who was then not counsel of record left a voice mail message stating is was a "waste of his time" to have to file a motion for substitution of attorney (A3-A8). Mr. Brian Hak who then was counsel of record basically abandoned the case. [It is not clear the basis of the ex parte conversation with Martin Allen and Douglas Allen on May 26, 2016 pointing out to the Tax Court its receipt of that May 16 memo – A9.]

Even as of May 13, 2016 Martin Allen who was not counsel of record stated he "may file with the Court a Motion to permit the substitution of this law firm". (A10 - 3rd parag. up... [Conversely, the Court rules require the withdrawing attorney to file the motion. Citation omitted.]

Accordingly it appears clear that the "Motion" the Order was based was an ex parte communication between Martin Allen while he was not counsel of record and the Tax Court as no Notice was served on the plaintiff. [As noted in that May 16, 2016 memo, Mr. Brian Hak, who was counsel of record, basically abandoned the case.]

This appears to be a pattern of ex parte communication on Martin Allen's part and his encouraging others to enter into ex parte communication. For example, David Centrelli, Tax

2

$NP23$

Assessor of Bernards stated he entered into a conversation with the Somerset County Tax

Board on or about April 7, 2016 to figure out how to handle the fact that Mr. Centrelli never

sent out a Notice of Disallowance within the New Jersey statutory time frame allowed (A6).

That Notice of Disallowance is in conflict with the terms of the Settlement that Bernards

Proposes and overlaps the disputes within this case. The County Tax Board lost jurisdiction over

upon an appeal of the County Tax Board to the Tax Court.

   Although not controlling, a reference in Federal Regulations suggest that those that

enter into or encourage others to enter into ex parte communication should be "excluded from

the proceedings" (A11-12 – emphasis added A12).

   Accordingly, in that the New Jersey Rules and case law precedent (citation omitted)

show that the counsel of record (Brian Hak) is the one required to move the court for

withdrawal/substation; and the fact that Martin Allen who was not counsel of record never

made a motion that provided adequate Notice to the opposing party; and that fact that it

appears Martin Allen was participating and encouraging others (David Centrelli) to participate

in ex parte communication (with the Somerset Count Tax Board), Judge DeAlmedia's Order

should be reversed.

   As noted above, the relevancy of this interlocutory appeal is that Judge DeAlmedia

noted himself on the record that this case included due process related tax matter and that due

process concerns could be brought before the Tax Court.

   As to the "timing" of responding to Martin Allen's inquiry that he complained of, and

the "failure to timely respond" (A10),  Martin Allen was not counsel of record and it was Mr.

NP24

.κ's responsibility to inquire as to withdrawal/substitution and if necessary, move the Court

for relief. Moreover, as stated to Mr. Centrelli, I would follow up on the matter on or about

May 13 as soon as I completed dealing with another matter the township was familiar with

(A13) that was precipitated in part because as some say an inappropriate Twitter posts by a

Bernards Township Official (A14).

Accordingly please reverse Judge DeAlmedia Order in this matter.

Respectfully submitted,

Michael S. Barth

C:      Martin Allen, Esq.
        Brian M. Hak, Esq.

4

N P25

BAATN
PO BOX 832
FAR HILL, NJ 07931

CLERK OF COURT
CLARKSON S. FISHER BUILDING & U.S. COURTHOUSE
402 EAST STATE STREET
TRENTON, NJ 08608

CERTIFIED MAIL

7015 1660 0000 4704 3910

U.S. POSTAGE
PAID
BEDMINSTER, NJ
07921
AUG 27 16
AMOUNT
$5.29
R2305K135331-03

1000
08608